# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID No. 1512004476 |
| | ) | |
| MICAH SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: January 22, 2024
Decided: April 30, 2024

*Upon Defendant's Motion for Postconviction Relief*
**DENIED**

## MEMORANDUM OPINION

Micah Smith, *pro se*, Howard R. Young Correctional Institution, Wilmington, Delaware.

Jenna Milecki, Deputy Attorney General, Department of Justice, Wilmington, Delaware

**BRENNAN, J.**

Micah Smith (hereinafter "Smith") filed his second motion for postconviction relief ("Second Rule 61 Motion") with respect to his criminal convictions for various sexual offenses. Following a five-day trial, a Superior Court jury convicted Smith of one count of Continuous Sexual Abuse of a Child, one count of Sexual Abuse of a Child by a Person in a Position of Trust, Authority, or Supervision in the Second Degree, and three counts of Unlawful Sexual Contact in the First Degree. Smith was acquitted of one count of Unlawful Sexual Contact in the First Degree.[1] Smith was sentenced to 10 years of unsuspended Level V time, followed by decreasing levels of supervision.[2] The Delaware Supreme Court affirmed Smith's convictions.[3] The Superior Court denied Smith's first motion for postconviction relief;[4] that denial was affirmed by the Delaware Supreme Court.[5]

## I. Facts

The facts of this case as presented at trial have been recited previously by both the Supreme and Superior Courts in their respective decisions on Smith's previous filings. The facts recited below are taken from those decisions.

[]The evidence at trial showed that Smith, who did contract attorney work in D.C., lived in the basement bedroom of his brother's house for

---

[1] *Smith v. State*, Crim. I.D. No. 1512004476, Docket Item 105 (hereinafter referred to as "D.I. __")

[2] D.I. 122, 123.

[3] *Smith v. State*, 2018 WL 2427594 (Del. May 29, 2018).

[4] *State v. Smith*, 2020 WL 1287762 (Del. Super. Mar. 16, 2020).

[5] *Smith v. State*, 2021 WL 567703 (Del. Feb. 15, 2021).

about ten years. Smith often babysat his niece ("the Child") and two nephews. On April 24, 2015, the Child, who was nine years old, and her mother ("the Mother") were searching the Internet for family pictures. After they searched for the Child's name and some pictures of scantily clad women appeared, the Child became upset at the thought that Smith may have posted photographs of her without a shirt. The Child told the Mother that Smith would hold her down, kiss her chest, and touch her private parts.

[]After the Child fell asleep, the Mother, who had long been displeased with Smith's presence in the house, confronted Smith. She ordered Smith to leave the house, which he did. The Mother's sons overheard the confrontation. The Mother then called the Division of Family Services to report Smith's behavior.

[]On May 4, 2015, a forensic interviewer at the Children's Advocacy Center ("CAC") interviewed the Child. The Child said something bad happened, but refused to talk about it. An ongoing police investigation was closed. The Mother feared that Smith would file a civil lawsuit against her and his brother.

[]The Child received counseling. As part of her counseling, the Child was instructed to tell the Mother what happened to her. In October 2015, the Child told the Mother that Smith would ask her if she wanted to play Go Fish, and even if she said no, he would grab her and take her downstairs to his bedroom. The Child said that Smith would hold her down, touch her with his penis, have her touch his penis, and "pee" on her. The Mother contacted the police officer who had previously worked on the case. On November 16, 2015, the Child had a second interview at the CAC. During this interview, the Child described how Smith had touched her. She said he started touching her when she was eight or about to turn eight.

[]After the Child's second CAC interview, the police collected potential evidence from the basement and Smith's bedroom, including a bedspread. Testing of the bedspread revealed DNA profiles, but Smith was excluded as a contributor. No seminal fluid was detected on the carpet. Between Smith moving out and the police collecting evidence from the basement, the family cleaned Smith's room, including the bed linens, the Child's oldest brother had a party in

the basement and used Smith's room, and the family did additional clean-up with a shop vacuum and carpet shampoo after a pipe in the basement ceiling leaked.

[] A defense expert witness testified about best practices for forensic interviews of children and the risk of poor interview techniques leading to false memories. This witness criticized certain questions in the second CAC interview. The CAC interviewer testified that she followed the interview protocol used at the CAC.

[] Smith's mother testified that, in January 2014, the Mother told her that she hated Smith and wanted him out of her house. After Smith's mother suggested the Mother talk to her husband/Smith's brother about that, the Mother said he would not get involved, but she could. According to Smith's mother, the Child would shut the door to Smith's bedroom because her brothers' video games were too loud. Smith's mother also testified that she believed Smith had a good, healthy relationship with the Child.

[] Smith testified that he never touched the Child in a sexual manner. He said sometimes the Child would come downstairs to his room and ask to play cards. Sometimes he or the Child would shut the door because his nephews were playing loud video games. He lived in his brother's basement to pay off his student loans and save money.[6]

The Superior Court summarized the trial testimony in the following:

At trial, the State presented testimony of numerous witnesses, including a forensic interviewer with the Children's Advocacy Center of Delaware ("CAC") who conducted two interviews with Child regarding Child's allegations of Defendant's abuse of Child; an employee from the DNA Unit of the Delaware Division of Forensic Sciences who tested samples taken from the bedroom where the abuse allegedly occurred; a detective employed with the Evidence Detection Unit of the New Castle County Police Department who examined the bedroom; a New Castle County Police Department detective who was assigned to investigate Defendant's case; Child; Child's Mother; Child's two brothers; and Child's father.

---

[6] *Smith v. State*, 2018 WL 2427594 at *1-2.

Defendant elected to present a defense. Several defense witnesses testified, including Defendant's mother, who was familiar with Defendant's living arrangements; the detective who investigated Defendant's case; and a memory cognition expert who criticized certain questions asked by the CAC interviewer. Defendant also testified as a witness.

The evidence at trial showed the following:

- On April 24, 2015, Child, who was nine years old at the time, disclosed Defendant's abuse to Child's Mother who confronted Defendant and ordered Defendant to leave the home. The evidence also showed that Child's Mother had long been displeased with Defendant's presence in the home. Defendant left the household after being confronted by Child's Mother. Child's Mother then called the Division of Family Services to report Defendant's alleged abuse of Child.

- On May 4, 2015, Child was interviewed at CAC for the first time. During the interview, Child stated that something had happened involving Defendant but refused to talk about it. The police investigation into Defendant's conduct was closed after the first CAC interview.

- Child's Mother feared that Defendant would file a civil lawsuit against Child's Mother and her husband.

- In October 2015, Child's Mother contacted the police officer who had previously investigated Child's claims about Defendant. At this time, Child's Mother reported that Child disclosed more details about Defendant's abuse.

- On November 16, 2015, the CAC interviewer conducted a second interview with Child during which Child disclosed additional details about abuse of Child by Defendant.

- After Child's second CAC interview, the police collected potential evidence from the basement and the bedroom in

which the abuse allegedly occurred. Testing of a bedspread located in the bedroom revealed DNA profiles, but Defendant was excluded as a contributor. However, the basement, including the bedroom, had been cleaned several times since Defendant had moved out more than six months previously.

During her testimony at trial, Child described how Defendant sexually abused her, including the frequency with which the abuse occurred. Child's statements during the CAC interviews were also admitted through video recordings pursuant to 11 *Del. C.* § 3507. The younger of Child's two older brothers testified that he was often in the basement watching television or playing video games when Child went into Defendant's bedroom and recalled Child sometimes saying that she did not want to go into the bedroom. Child's oldest brother testified that he noticed Child spending time with Defendant in the bedroom when Child was eight years old.

Trial Counsel's defense strategy was to question the veracity of Child's allegations by suggesting that Child's Mother had manipulated Child into falsely believing that Defendant had abused Child in order to force Defendant out of the home. Defendant's mother testified that, in January 2014, Child's Mother stated that she hated Defendant and wanted him out of the home. Defendant's mother testified that she believed Defendant had a healthy relationship with Child. Defendant's expert witness criticized certain questions asked of Child during the second CAC interview, suggesting that poor interview techniques could have led to false memories.

Defendant testified that he never touched Child in a sexual manner, that Child would visit his bedroom to play cards, and that he or Child would occasionally shut the bedroom door when Child's brothers were playing loud video games in the basement outside Defendant's room. Defendant also testified that he lived in the basement of the family's home to pay off student loans and to save money, and had lived in the basement for 10 years.[7]

---

[7] *State v. Smith*, 2020 WL 1287762 at *1-2-3.

## II. Procedural History

Smith was represented by two attorneys, acting as co-counsel, at trial (hereinafter "Trial Counsel"). Following his unsuccessful direct appeal, Smith filed his first, timely postconviction motion, having asserted one claim of ineffective assistance of counsel. Rule 61 Counsel was appointed to represent Smith. Upon review of the entire record, Rule 61 Counsel did not identify any meritorious claims and moved to withdraw. After reviewing the Affidavit of Trial Counsel and the State's response in opposition, the Court denied Smith's motion and granted withdrawal of postconviction counsel. Smith appealed; the Supreme Court affirmed this Court's decision on February 15, 2021.[8]

During the pendency of his postconviction appeal, Smith moved for modification of his sentence.[9] This motion was denied on March 29, 2021.[10] He then filed another motion for modification of sentence on October 7, 2022.[11] The State responded in opposition and a hearing was held on December 22, 2022, at which time the motion was denied, as Smith posited no basis for modification, but instead argued ineffective assistance of counsel. It was at this time Defendant first presented the Court with purported work and travel alibi records upon which his

---

[8] *Smith v. State*, 2021 WL 567703 (Del.).
[9] D.I. 171.
[10] D.I. 173.
[11] D.I. 174.

most recent motion is centered. Despite Smith's claims in the instant motion, the Court did not encourage him to file the instant motion, but simply provided him with the reason for the denial of his motion for modification of sentence.[12]

On December 29, 2022, Smith filed the instant Second Rule 61 motion for postconviction relief.[13] In this motion, Smith argues three grounds warrant postconviction relief: (1) ineffective assistance of trial counsel failing "to submit exculpatory evidence at trial . . . that showed [Smith] was working in Washington D.C. during the period" listed on the indictment; (2) ineffective assistance of trial counsel for inaccurately stating in opening statements that Smith had been working part-time, when he had been working full-time; and (3) new evidence exists in the form of his work and travel documentation in Washington D.C., during the time frame of the offenses.[14]

The State responded on March 29, 2023,[15] to which Smith replied on April 17, 2023.[16] Based upon the claims raised, the Court distributed the Trial Activity Sheet and requested an Affidavit from trial counsel to whom the allegations were directed.[17] Upon receipt of counsel's Affidavit, the Court requested an Affidavit

---

[12] D.I. 178.
[13] D.I. 178, 182.
[14] *Id.* The "new evidence" includes employment verification letters, a usage record of a DC Smart Trip Card, and an airline confirmation email.
[15] D.I. 186.
[16] D.I. 187.
[17] D.I. 189.

from co-counsel.[18]  That Affidavit was filed on August 29, 2023.[19]  Following receipt, Smith filed two subsequent responses to counsel's Affidavit.[20]  The State filed their supplemental response on November 6, 2023.[21]  Smith then filed three more responses to the Affidavits filed; two separate filings on December 1, 2023, and one on January 22, 2024.[22]  This is the Court's decision.

### A.    Bars to Relief.

Before addressing the merits of a postconviction motion, the Court must apply the procedural bars of Superior Court Criminal Rule 61(i).[23] A motion for postconviction relief may be procedurally barred as untimely, successive, a finding of a procedural default, or if a claim or claims have been formerly adjudicated.[24] If any one of those procedural bars exists, the Court may not consider the merits of the postconviction claim.[25]

Under Rule 61(i)(1), a motion for postconviction relief cannot be filed more than one year after the judgment of conviction is final.[26] A defendant's conviction is final thirty days after this Court imposes its sentence, or when the Delaware Supreme

---

[18] D.I. 192.
[19] D.I. 193.
[20] D.I. 194, 196.
[21] D.I. 197.
[22] D.I. 200, 201, 202.
[23] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[24] Super. Ct. Crim. R. 61(i)(1)-(4).
[25] *Id.*
[26] Super. Ct. Crim. R. 61(i)(1).

Court issues a mandate or order where the conviction was directly appealed.[27]

Defendant's conviction became final on June 15, 2018.[28]  The instant motion was filed on December 29, 2022.  Therefore, Smith's Second Rule 61 Motion is untimely.

Second or subsequent postconviction motions must be summarily dismissed unless the movant was convicted following trial and the motion either:

> (i) pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or (ii) pleads with particularity that a claim that a new rule of constitutional law made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court applies to the movants case and renders the conviction . . . invalid.[29]

As stated above, Smith was convicted following trial.  He is not claiming a new rule of constitutional law to excuse his default, but argues new evidence exists which allows review.

To overcome these procedural bars, Smith must meet the pleading requirements under Rule 61(d)(2)(i) or (d)(2)(ii).  Under these rules, any exceptions to the bars to relief in a successive petition must be pled with particularity.  Smith contends that he did not raise the arguments stated above in his first motion for postconviction relief because Trial Counsel informed him that these records would

---

[27] Super. Ct. Crim. R. 61(m)(1)-(2).
[28] D.I. 140.
[29] Super. Ct. Crim. R. 61(i)(2); Super. Ct. Crim. R. 61(d)(2).

be submitted to the Court.[30] Additionally, Smith asserts that his court appointed Rule 61 counsel found "no appealable issues that could be raised on an appeal for postconviction relief after they did a complete review of [his] trial transcripts and trial records."[31]

In response, the State asserts Smith cannot "overcome the procedural bar prohibiting successive motions in the present Motion, [because] the Rule requires that he 'pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact.'"[32] The State also argues Smith has failed to set forth new evidence to prove his innocence and "continues to argue that [Trial Counsel's] strategy in introducing that evidence was ineffective."[33]

Smith cannot overcome the bars to relief. As stated, Smith's second postconviction motion is not timely. Smith's instant motion for postconviction is repetitive and he fails to meet the pleading requirements of Rule 61(d)(2)(i) and (ii). Smith has not pled with particularity that new evidence exists to overcome these bars.

Ground One (1) of his motion raises ineffective assistance of counsel for failing to submit into evidence the work and travel documents. This claim was not

---

[30] D.I. 182.
[31] *Id.*
[32] D.I. 186, citing Super. Ct. Crim. R. 61(d)(2).
[33] D.I. 186.

raised in his timely, initial motion for postconviction relief.  Ground Two (2) of this motion alleges counsel was ineffective for misstating in opening statements that Smith worked part-time, when he alleges he was working full time.  Again, this issue was not raised in his initial, timely postconviction motion.

Ground Three (3) of this motion, and his multiple subsequent filings, argues that time sheets and travel documentation Smith attached to the instant motion show that he could not have been in Delaware during the timeframe of the crimes and that it is new evidence of his innocence.[34]  Defendant's arguments acknowledge that this evidence was in existence at the time of the trial and it is not new.   For example, Ground One of his motion argues counsel was ineffective for failing to present this evidence to the jury, which was available to them at the time of trial.

While it is possible for issues known at the time of trial to be considered "new" for purposes of this Superior Court Criminal Rule 61,[35] it is not the case here.  Smith must show, with particularity 1) that this "new" evidence would probably change the result should a new trial be granted, 2) could have been discovered prior to with the exercise of due diligence and 3) is not cumulative or impeaching.[36]  Smith has not done any of these requirements.  Not only has he failed to sufficiently plead this exception, but the trial evidence and the Affidavits of counsel show that the exhibited

---

[34] D.I. 182 at ¶ 3, 183, 187, 196, 201, 202
[35] *Purnell v. State*, 254 A.2d 1053, 1100 (Del. 2021).
[36] *Id.*

documents do not provide the alibi defense Smith claims.[37]  The allegations by the Child span a wide time frame and given the testimony presented at trial, it is entirely possible that even if Smith was traveling and working, he had the opportunity to commit the offenses of which he was convicted.  Summary dismissal is appropriate, as it plainly appears from the Motion, the State's Responses, the Affidavits of Trial Counsel, Smith's Responses and the complete record of the case that Smith is not entitled to relief.[38]

### B.    Smith is otherwise not entitled to postconviction relief.

That said, even affording Smith a liberal reading of his claim that "new evidence" exists, but without making such a finding, the merits of Grounds One and Three of Smith's motion will be reviewed despite the application of the procedural bar.  Ground Two, however, will not be reviewed despite the procedural bar, given Smith's complete failure to meet any exceptions as to why this claim was not raised in his prior motion.

In Ground One, Smith claims trial counsel was ineffective for failing to submit his work and travel records as evidence before the jury.  Ground Three (3) of his motion, as noted above, alleges that these work and travel records constitute new

---

[37] D.I. 191, 193.
[38] Super. Ct. Crim. R. 61(d)(5).

evidence and because they were not presented to the jury, a new trial should be awarded.

Because these two grounds are so inextricably intertwined, they will be addressed together. In order to succeed on a claim of ineffective assistance of counsel, Smith has the burden to show that counsel's representation at trial fell below "an objective standard of reasonableness" and that there is a "reasonable probability" that, but for counsel's alleged errors, the results of the proceedings would have been different.[39] Trial Counsel both address the decision to not present the work and travel records to the jury in their respective Affidavits. It is clear from the Affidavits that counsel were aware of and made the strategic decision not to present this evidence. Nor did counsel make Smith any promises regarding presenting these records to the jury.

To quote from trial counsel's Affidavit:

> The documents attached ... to Smith's motion, if presented to a fact finder, would effectively undercut his own testimony. The documentation from one employer indicates that he averaged '38 hours per week' and from another that he worked as few as 18.8 hours in a week. Furthermore, the transit records reflect a number of days in which Smith was not working in Washington, D.C. Therefore, not only did the vagueness of the victim's testimony make it possible that the crimes were committed on the dates and times when he was not at work, but his own records would have undercut his own credibility on the issue.[40]

---

[39] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[40] D.I. 193.

The Affidavits are supported by the trial record in this matter. Smith cannot meet his burden to show either that counsel's representation fell below an objective standard of reasonableness or that the results of the trial would have been different, even assuming that the first prong could be met. Therefore, this claim is denied.

Ground Three (1) is similarly denied. Smith has failed – despite his multiple submissions to the Court – to plead with particularity just how these records would have changed the result of the trial. He has not met his burden to show that this evidence presented is "new evidence" that can show he is actually innocent of the crimes.[41] As stated above and as evidenced by the denial of Ground One, Smith's claim fails.

As a result, Smith's subsequent motion for postconviction relief is DENIED.

**The Honorable Danielle J. Brennan**

---

[41] *Purnell*, 254 A.2d at 1100.